**UNITED STATES of America, Appellee,**

v.

**Austin Jerry HUX, dba Fireball Electronics, Appellant.**

**No. 90–2914.**

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1991.

Decided July 26, 1991.

the copyright of computer programs contained in satellite descramblers in violation of 17 U.S.C. § 506(a). Hux appeals on three grounds. First, he contends that 18 U.S.C. § 2512(1)(b) is not applicable to the conduct alleged in the first two counts. Second, he asserts that the district court erred in admitting certain evidence. Third, he alleges that the evidence was insufficient to convict him of the copyright charges. For the reasons stated below, we reverse in part and affirm in part.

## I. BACKGROUND

Hux sells and services satellite systems, two-way radios, and other electronic devices. In March 1989, an undercover agent working with the FBI asked Hux to modify a General Instruments VideoCipher II Satellite Descrambler Module so that it would receive premium pay channels without the user paying the provider of the programming. Hux made the modification for $400. Again in May 1989, the undercover agent gave Hux a VideoCipher II for modification. Hux modified the second unit and was paid $400. The FBI analyzed the descrambler and found that a computer chip had been modified to allow the receipt of all encrypted channels. On the basis of this evidence, a search warrant was issued for Hux's business, Fireball Electronics. Items seized during the search included modified computer chips, programs to modify computer chips, and the tools necessary to perform the modifications.

Hux was indicted on two counts of manufacturing an electronic device for the purpose of surreptitiously intercepting electronic communications, two counts of copyright infringement, and one count that was dismissed prior to trial. Hux was convicted on the four counts presented to the jury. He was sentenced to three years of probation, six months of which was to be served in an in-home detention program. Additionally, he was fined $40,000. Hux appealed his convictions to this court.

Ronald L. Griggs, El Dorado, Ark., for appellant.

Matthew W. Fleming, argued (J. Michael Fitzhugh and Matthew W. Fleming, on brief), Fort Smith, Ark., for appellee.

Before LAY, Chief Judge, and PECK * and ROSS, Senior Circuit Judges.

JOHN W. PECK, Senior Circuit Judge.

Austin Jerry Hux appeals from a guilty verdict in the district court[1] on two counts of manufacturing an electronic device which surreptitiously intercepts electronic communications in violation of 18 U.S.C. § 2512(1)(b) and two counts of infringing

---

* The HONORABLE JOHN W. PECK, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

1. The Honorable Oren Harris, Senior District Judge for the Western District of Arkansas.

## II. APPLICABILITY OF 18 U.S.C. § 2512(1)(b)

■ 18 U.S.C. § 2510 *et seq.* are commonly referred to as the Wiretap Law. Hux argues that as such 2512(1)(b) is not applicable to the alleged conduct of modifying satellite descramblers. His contention presents a difficult question of statutory interpretation that has caused a split of opinion within the Circuit Courts.

### A. Statutory authority

The legislative history of 18 U.S.C. § 2512 as it was originally promulgated states that its statutory language is intended to "establish a relatively narrow category of devices whose principal use is likely to be for wiretapping or eavesdropping.... The crucial test is whether the design of the device renders it *primarily* useful for *surreptitious* listening." S.Rep. No. 90–1097, 90th Cong., 2nd Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 2112, 2183. Martini olive transmitters, spike mikes, and other microphones disguised as jewelry, pens, or cigarette lighters were specifically listed as prohibited devices. *Id.*

In 1986, the existing law was amended through the Electronic Communications Privacy Act of 1986. The stated purpose of the amendments was to "update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technology." S.Rep. No. 99–541, 99th Cong.2d Sess., *reprinted in* 1986 U.S.Code Cong. & Admin.News 3555. While the original law covered only interception of oral and wire communications, the amendments added electronic communications as well. The legislative history lists many of the new telecommunications and computer technologies covered by the amendments including electronic mail, computer-to-com-

puter communications, electronic bulletin boards, microwave, cellular telephones, cordless telephones, electronic pagers, pen registers, trap and trace devices, electronic tracking devices, and remote computer services. *Id.* at 3562–65. Interception of certain satellite transmissions by home viewers is discussed in the legislative history only in the context of excepting *unencrypted* satellite transmissions from the Wiretap Law under 18 U.S.C. § 2511.[2] In fact, the legislative history states that "[t]he private viewing of satellite cable programming, network feeds and certain audio subcarriers will continue to be governed exclusively by [47 U.S.C. § 605] and not by [18 U.S.C. § 2510 *et seq.*]. *Id.* at 3576.

The amended provision under which Hux was charged, 18 U.S.C. § 2512(1)(b), imposes criminal sanctions on anyone who intentionally:

manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications....

Hux contends that the proper statute for the alleged conduct is 47 U.S.C. § 605(e)(4) which provides criminal penalties for:

Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming....

As noted earlier, the propriety of convicting a person who manufactures or sells modified descramblers under § 2512 has caused a split in the Circuits.

**2.** 18 U.S.C. § 2511(4)(c) provides:

Conduct otherwise an offense under this subsection that consists of or relates to the interception of a satellite transmission that is not encrypted or scrambled and that is transmitted—

(i) to a broadcasting station for the purposes of retransmission to the general public; or

(ii) as an audio subcarrier intended for redistribution to facilities open to the public, but not including data transmission or telephone calls,

is not an offense under this subsection unless the conduct is for the purposes of direct or indirect commercial advantage or private financial gain.

18 U.S.C. § 2511(5)(a)(i)(A) subjects private viewing of unencrypted satellite transmissions to a suit by the Government.

B. Case law

In *United States v. McNutt*, 908 F.2d 561 (10th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991), the Tenth Circuit concluded that the defendant, who was involved in a conspiracy involving cloned satellite descramblers for unauthorized interception of satellite programming, was properly charged under § 2512. While admitting that there was some legislative history to the contrary, the Tenth Circuit determined that it was ambiguous and looked to the plain language of the statute for guidance. Under the statute, "intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). "Electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio...." 18 U.S.C. § 2510(12).

The Tenth Circuit reasoned that satellite television transmissions carry both images and sounds by radio waves and that the defendant's cloned descramblers were electronic devices which intercepted electronic communications. 908 F.2d at 564–65. The reception of programming through the cloned descramblers is surreptitious because the satellite television program providers are unaware that it is being intercepted. *Id.* at 565. Therefore, the Tenth Circuit concluded that the defendant was properly charged under § 2512. *Id.* No mention was made of 47 U.S.C. § 605.

The Eleventh Circuit reached the opposite conclusion in *United States v. Herring*, 933 F.2d 932 (1991), a case in which the defendants modified VideoCipher II units so that they could receive unauthorized satellite programming. In *Herring*, the court provided a thorough historical and precedential review of § 2512. In doing so, the court cited *United States v. Schweihs*, 569 F.2d 965 (5th Cir.1978), a case which reverses a conviction under § 2511(1)(b) as it was originally promulgated. In *Schweihs*, the defendant had made an amplifier that aided him in avoiding an alarm system in an office he was burglarizing. The Government witnesses testified that the amplifier could be used with ordinary audio equipment and that it was not primarily useful for surreptitious listening. *Id.* at 969. In overturning the conviction, the court in *Schweihs* examined the legislative history and concluded that even a device that was constructed for eavesdropping was not prohibited by the statute "if its design characteristics do not render it *primarily* useful for that purpose." *Id.* at 968. The court stated that the statutory language "reflects a careful and studied congressional decision to leave untouched the production, distribution, and possession of electronic equipment designed for regular use in varied nonsurreptitious activities, even though the equipment is capable of being used in a surreptitious manner...." *Id.* The Eleventh Circuit determined that the modified descramblers in *Herring* also had no specifically surreptitious characteristics. *Herring* at 934. Their similarity to legitimate descramblers was precisely what made them useful for illegitimate reception of satellite transmissions. *Id.* Because the descramblers have significant legitimate uses and are not primarily useful for surreptitious listening, the Eleventh Circuit concluded that the *Herring* defendants could not have been convicted under § 2512(1)(b) prior to its amendment. *Id.*

The legislative history of the 1986 amendments to the Wiretap Law stated that private viewing of cable programming was governed exclusively by 47 U.S.C. § 605. The Eleventh Circuit noted that the provisions of § 605 clearly prohibited the defendants' conduct in modifying descramblers to allow unauthorized access to satellite programming. *Herring* at 937. In examining whether both 47 U.S.C. § 605 and 18 U.S.C. § 2512(1)(b) applied to the conduct, the court noted that criminal statutes are to be construed narrowly in favor of the defendant. *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971). The court concluded that the ambiguity of the statute and its history, in conjunction with the fact that the conduct would not have been prohibited

under the Fifth Circuit's interpretation of § 2512(1)(b) in *Schweihs*, indicated that lenity was appropriate. *Herring* at 937. Next, the court noted the principle of statutory construction that a "statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum." *Id.* (citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976)). The Eleventh Circuit acknowledged that where statutes overlap, the prosecutor has discretion in choosing the statute for indictment. *Id.* at 938. However, the court concluded that these statutes do not overlap, or even if they do, § 2512(1)(b) is so ambiguous as to require prosecution under the more specific statute. *Id.* at 938.

Finally, the Eleventh Circuit acknowledged the Tenth Circuit's position in *McNutt, supra.* The court determined that *McNutt* incorrectly interpreted "surreptitiously" for the purpose of § 2512(1)(b). *Id.* at 938–39. Citing *Schweihs*, the court concluded that the significant legitimate uses for the descramblers take them out of the ambit of the devices prohibited under § 2512(1)(b).

### C. Conclusion

The difference of opinion in the Circuits demonstrates that the interpretation of § 2512(1)(b) is a difficult matter. Under the Tenth Circuit's interpretation, Hux's conduct was prohibited by § 2512(1)(b). However, that interpretation discounts the legislative history and ignores the existence of 47 U.S.C. § 605. We believe that the Eleventh Circuit has the better reasoned approach in considering the past and present legislative history, prior case law, principles of statutory construction, and the provisions of 47 U.S.C. § 605. Accordingly, we reverse Hux's conviction under 18 U.S.C. § 2512(1)(b).

### III. ADMISSIBILITY OF EVIDENCE

■ Next, Hux complains that the district court erred in admitting General Instruments' copyright certificates because they did not appear on the Government's evidence list and were not produced by the Government until the first day of trial. Hux notes that Federal Rule of Criminal Procedure 12(d) requires the Government to provide notice of its intention to use in its case-in-chief any evidence that the defendant is entitled to discover under Federal Rule of Criminal Procedure 16. Hux submits that this untimely production of evidence prejudiced his ability to prepare for trial.

At trial, the defense objected to the admission of the certificates. Upon the objection, the trial court held a bench conference. The Government attorney stated that he had just received the certificates on the morning of the trial. The Government noted that the certificates were merely business documents showing registration of the copyrights, not the copyrighted programs themselves. The trial judge extended the lunch recess so that defense counsel would have an adequate opportunity to examine the documents and then ruled that the certificates were admissible.

This court may reverse the district court's evidentiary rulings only upon a showing of an abuse of discretion. *United States v. Simon*, 767 F.2d 420 (8th Cir.), *cert. denied*, 474 U.S. 863, 106 S.Ct. 179, 88 L.Ed.2d 148 (1985). We conclude that there has been no such abuse in this case. As the Government noted, the certificates were merely business documents that substantiated the existence of the copyrights. Hux presented an expert witness who testified about the actual copyrighted material and concluded that there had been no infringement. Thus the tardy production of the certificates did not preclude Hux from preparing his defense with regard to the copyrighted material. Additionally the judge allowed the defense counsel adequate time to examine the documents during the long lunch break. Defense counsel did not indicate that he needed more time. Accordingly, we conclude that the district court did not abuse its discretion in admitting the certificates.

### IV. SUFFICIENCY OF THE EVIDENCE

■ Hux was indicted under 17 U.S.C. § 506(a) which applies to "[a]ny person

who infringes a copyright willfully and for purposes of commercial advantage or private financial gain...." The district court instructed the jury that the Government must prove the following elements beyond a reasonable doubt: 1) that the computer program in the satellite descrambler modules had a valid copyright; 2) that Hux infringed the copyright by preparing one or more derivative works or computer programs, or by reproducing or selling unauthorized copies of the computer program; 3) that Hux willfully infringed the copyright; and 4) that the act of infringement was for commercial advantage or private financial gain.

Hux argues that the evidence was insufficient to sustain his convictions under § 506(a). Hux notes that only 205 bytes on the computer chip he developed were similar to the total of 16,384 bytes on General Instruments' chip. He contends that this similarity is insignificant and that he merely replaced the original chip with another that was the product of his own labor. As such, he argues that there has been no copyright infringement. *Apple Computer, Inc. v. Formula International, Inc.*, 562 F.Supp. 775, 782 (C.D.Cal.1983), *aff'd*, 725 F.2d 521 (9th Cir.1984) (one may make a machine do the same thing it would if the copyrighted material were placed in it as long as it is by one's own creative effort, not piracy). Hux also disputes that the Government proved the second element of infringement. Hux's expert witness testified that Hux's chip was not a derivative work or other infringement of the General Instruments' chip.

In reviewing the sufficiency of the evidence, a conviction must be upheld, if viewing the evidence in the light most favorable to the Government, substantial evidence supports the jury's verdict. *United States v. Marin–Cifuentes*, 866 F.2d 988, 992 (8th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989). The Government is also entitled to all reasonable inferences drawn from the evidence. *Id.* Additionally, the evidence need not exclude every reasonable hypothesis except guilt. It must only be sufficient to convince the jury of the defendant's guilt beyond a reasonable doubt. *Id.*

In addition to the copyright certificates, two witnesses testified that General Instruments held valid copyrights for the computer program in the descramblers Hux modified. A Government witness testified that the computer chips Hux substituted were derivative and essentially the same as General Instruments' copyrighted chip. An FBI agent assigned to the investigation testified that Hux admitted knowing that what he was doing was illegal. The purchaser of the modified units testified that he paid Hux $400 for each modification. Thus, evidence was presented on each of the four elements. Viewing this evidence in the light most favorable to the Government, we conclude that it was sufficient for the jury to reasonably find Hux guilty beyond a reasonable doubt of copyright infringement. Accordingly, we affirm the conviction.

ROSS, Senior Circuit Judge, dissenting.

I respectfully disagree with the rationale employed by the majority in reaching the conclusion that Hux was improperly charged under 18 U.S.C. § 2512(1)(b). The majority's conclusion rests upon a narrow interpretation of the legislative history which requires that the "design of the device renders it *primarily* useful for *surreptitious* listening." S.Rep. No. 90–1097, 90th Cong., 2nd Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 2112, 2183 (emphasis in original). However, "[a] device will not escape the prohibition merely because it may have innocent uses." *Id.*

The majority appears to conclude that the legislative history of section 2512(1)(b) requires that the design of the general class of device, i.e., "descramblers," must be primarily useful for the purpose of surreptitious listening. The majority reasons that because there are legitimate uses for "descramblers," the manufacture of this particular descrambler, even though modified, cannot fall within the ambit of 18 U.S.C. § 2512(1)(b). I disagree with this constricted interpretation of section 2512(1)(b).

In the present case, Hux was charged with manufacturing, assembling or possessing a modified version of a descrambler for the sole purpose of allowing unauthorized access to satellite programming. Contrary to the majority's reasoning, the "specifically surreptitious characteristic," at 317 (citing *United States v. Herring*, 933 F.2d 932, 934 (11th Cir.1991)), of the counterfeit descrambler was its similarity to legitimate descramblers, which in turn enabled the unauthorized access to satellite programming. This is not simply the surreptitious use of a legitimate electronic device; the counterfeit descramblers manufactured by Hux had no legitimate use other than to facilitate the unauthorized interception of satellite television signals.

Therefore, in my view, Hux's actions fall squarely within the plain language of the statute and the legislative history. Because I believe that the majority adopts an excessively narrow interpretation of section 2512(1)(b), I respectfully dissent.