UNITED STATES of America, Plaintiff,

v.

Stephen L. SHRIVER, Joseph R. Denman, Harry Lawrence Daly, and Joseph D. Fones, Defendants.

No. 91–30098.

United States District Court,
C.D. Illinois,
Springfield Division.

Feb. 4, 1992.

Elizabeth L. Collins, Asst. U.S. Atty., Springfield, Ill., for plaintiff.

Howard W. Feldman, Springfield, Ill., Steven Skelton, Bloomington, Ill., Steven Nardulli, Bruce Locher, Springfield, Ill., for defendants.

## OPINION

RICHARD MILLS, District Judge:

What do a martini olive transmitter and a modified satellite television descrambler have in common?

Fortunately, for the Defendants: nothing.

The issue in this case is whether modified satellite television descramblers are primarily useful for the surreptitious interception of electronic communications.

This Court concludes that they are not.

Defendants move to dismiss the superseding indictment, which charges them with conspiracy to violate 18 U.S.C. §§ 2511–12, 1343 and 47 U.S.C. § 605 for allegedly selling modified satellite television descramblers which the Government asserts were primarily useful for the pur-

pose of surreptitious interception of wire, oral or electronic communications.

## I. FACTS

In order to thwart the unauthorized reception of signals and to prevent owners of home satellite dishes from accessing, without charge, programming for which cable recipients must pay subscription fees, television programmers "scramble" the audio and video signals being transmitted. A television descrambler (via circuit boards and computer chips) allows the owners of satellite dishes to receive premium programming. Ordinarily, these devices are purchased and attached to home satellite dishes thereby permitting the owners to view programs to which they have subscribed. However, unscrupulous individuals have learned to modify descramblers so that these devices can receive premium programming without authorization or payment of subscription fees and sell them to owners and potential buyers of home satellite dishes who are willing to pay a high price.

Defendants are accused of conspiring to manufacture, possess and sell modified television descramblers, for monetary benefits; thereby defrauding the programmers of scrambled satellite television broadcasts in violation of, *inter alia*, 18 U.S.C. § 2511–12.

## II. ANALYSIS

This case boils down to the difficult and "shaky endeavor" of statutory interpretation. *Environmental Defense Fund, Inc. v. Chicago*, 948 F.2d 345, 350–51 (7th Cir. 1991). 18 U.S.C. § 2510 *et seq.* are commonly known as the Wiretap Laws. The Wiretap Laws were amended in 1986 and provide criminal penalties for:

(1) ... any person who intentionally—

(a) sends through the mail, or sends or carries in interstate or foreign commerce, any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications;

(b) manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce;

18 U.S.C. § 2512.

A difficult question of statutory interpretation which has caused a split of opinion between the Circuits now confronts this Court, we must determine whether Defendants are amenable to conviction under this statute.

### A. *Principles of Statutory Interpretation*

■ The starting point in interpreting a statute is the language of the statute itself. *Demarest v. Manspeaker*, —— U.S. ——, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991) and ambiguous criminal statutes must be narrowly construed in favor of the accused. *Rewis v. United States*, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971). "It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976). In addition to the legislative history of § 2512, Congress has enacted two statutes relevant to this Court's interpretation of § 2512: 18 U.S.C. § 2511 and 47 U.S.C. § 605.

■ As originally promulgated, the legislative history of § 2512 indicates that it was intended to apply to a relatively narrow category of devices principally used for wiretapping or eavesdropping. S.Rep. No. 90–1097, 90th Cong.2nd Sess. *reprinted in* 1968 U.S.C.C.A.N. 2112, 2183. "To be prohibited, the device would also have to possess attributes that give predominance to the surreptitious character of its use, such as the spike in the case of the spike mike or the disguised shape in the case of

the martini olive transmitter...." 1968 U.S.C.C.A.N. at 2183–84.

Undoubtedly, this section would not have applied to Defendants. However, in 1986, the Wiretap Laws were completely overhauled by the Electronic Communications Privacy Act of 1986 [1] in order to update the laws to account for new computer and telecommunications technology. S.Rep. No. 99–541, 99th Cong.2nd Sess., *reprinted in* 1986 U.S.C.C.A.N. at 3555. The updated version added electronic communications to the types of communications covered by the original act. There is no question that satellite transmissions fall within the purview of the Act. However, satellite transmission interception by home viewers is mentioned in the legislative history of the Act only in the context of excepting *unscrambled* satellite transmissions pursuant to 18 U.S.C. § 2511.[2] 1986 U.S.C.C.A.N. at 3575. In fact, the legislative history states that "[t]he private viewing of satellite cable programming ... will continue to be governed exclusively by [47 U.S.C. § 605] and not by 18 U.S.C. § 2511." 1986 U.S.C.C.A.N. at 3576.

At the time Defendants allegedly committed their offenses (March 1, 1987 to March 5, 1988), § 605 provided criminal penalties for:

> Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming....

47 U.S.C. § 605(e)(4). Clearly, this provision applies to the conduct charged in this case. As a result, two Circuit Courts of Appeal have concluded that because Congress knew it already had specific prohibitions regarding the unauthorized descrambling of satellite programming in place, it did not intend to supersede or overlap this provision with the Wire Tap Laws.

### B. *The Circuit Courts of Appeal*

The first case addressing this question was *United States v. McNutt,* 908 F.2d 561 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991). McNutt was involved in a conspiracy to sell cloned satellite descramblers and charged with a violation of § 2512. McNutt challenged his conviction under this section. The court reasoned that the defendant was properly charged under this section because the reception of programming through a cloned descrambler was "surreptitious" in that satellite television programmers were unaware that their signals were being intercepted without authorization. Consequently, the court held that § 2512 criminalizes the manufacture and sale of satellite signal descramblers. In reaching this conclusion, the court did not consider § 605.

The Eleventh Circuit announced an opposite conclusion in *United States v. Herring,* 933 F.2d 932 (11th Cir.1991). In *Herring,* the defendants were also charged pursuant to § 2512 for modifying satellite television descramblers. The court noted that § 2512 was ambiguous and must therefore be construed in favor of the defendants. *Herring,* at 937. After thoroughly investigating the legislative history and case law of § 2512 both before and after the 1986 amendments, the *Herring* court determined that modified television descramblers had no specifically surreptitious characteristics. *Herring,* at 934.

---

1. Pub.L. No. 99–508, 100 Stat 1848 (1986).

2. Section 2511 states in relevant part:
   Conduct otherwise an offense under this subsection that consists of or relates to the interception of a satellite transmission that is not encrypted or scrambled and that is transmitted—
   (i) to a broadcasting station for the purposes of retransmission to the general public; or

(ii) as an audio subcarrier intended for redistribution to facilities open to the public, but not including data transmission or telephone calls,
is not an offense under this section unless the conduct is for the purposes of direct or indirect commercial advantage or private financial gain.
18 U.S.C. § 2511(4)(c).

Furthermore, their similarity to legitimate descramblers was exactly what made them capable of being used for illegitimate purposes. Thus, the court reasoned that because the descramblers have a significant legitimate use and are not primarily used for surreptitious listening, the defendants could not have been convicted under § 2512 prior to the 1986 amendments. *Herring*, at 937. Because the 1986 amendments stated that private viewing of cable programming was governed exclusively under § 605 (which clearly prohibited the defendants' conduct) the court concluded that the Government was required to prosecute the defendants under the more specific § 605 rather than under the ambiguous § 2512. *Herring*, at 938.

In *United States v. Hux*, 940 F.2d 314 (8th Cir.1991), the defendant appealed his conviction under § 2512 for modifying and selling satellite descramblers. The court examined both the *Herring* and *McNutt* decisions. The *Hux* court concluded that *Herring* was the better reasoned decision because it considered the past and present legislative history, prior case law, principles of statutory construction, and the provisions of § 605. Accordingly, it reversed the defendant's conviction under § 2512.

### III. CONCLUSION

■ Two factors are determinative of whether the Defendants in this case were properly charged under § 2512: 1) the meaning of "surreptitious;" and 2) the relationship of § 2512 and § 605. This Court agrees with the reasoning set forth by the Eleventh and Eighth Circuits: "surreptitious," as used in the Wire Tap Laws, refers to the *design* of the interception device, *not its use.* Therefore, because the primary function of a device such as a martini olive transmitter is fundamentally different from that of a satellite descrambler, this Court concludes that descramblers are not within the spectrum of devices prohibited under § 2512 despite their potential illegitimate use.

■ Furthermore, such an interpretation is consistent with Congressional intent as expressed in § 2511 and § 605. The legislative history of the 1986 amendments to the Wire Tap Laws clearly states that § 605 exclusively governs the private viewing of cable programming. Accordingly, Defendants cannot be charged with violations under § 2511 and 2512.

*Ergo,* Defendants' motion to dismiss the superseding indictment is ALLOWED.