**UNITED STATES of America,**

v.

**Stephen HOCHMAN, Defendant.**

**No. 91–CR–419 (TCP).**

United States District Court, E.D. New York.

Dec. 29, 1992.

Douglas T. Burns, Asst. U.S. Atty., Christopher A. Nicolino, Special Asst. U.S. Atty. (Of Counsel), Brooklyn, NY, for U.S.

Richard P. Broder, P.C., for defendant Stephen Hochman.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

In a three-count superseding indictment filed April 23, 1992, the Government charged Stephen Hochman with various offenses arising from his business of supplying electronic components. Specifically, that indictment charges Hochman with violating and conspiring with others to violate 18 U.S.C. § 2512(1)(b) ("surreptitious interception of ... electronic communications") and 47 U.S.C. § 605(e)(4) ("unauthorized decryption of satellite cable programming"). Hochman now moves this Court for an Order dismissing Count III of the indictment (charging him with violating 18 U.S.C. § 2512(1)(b)) and part of Count I (charging him with conspiring to violate 18 U.S.C. § 2512(1)(b)).

This case apparently raises a novel question of statutory interpretation in the Second Circuit. The question presented is whether 18 U.S.C. § 2512(1)(b) reaches Hochman's alleged conduct, to wit, knowingly and intentionally conspiring "to manufacture, assemble, possess and sell ... altered circuit boards, knowing ... that the design rendered said boards primarily useful for the purpose of the surreptitious interception of ... satellite transmissions of television programs, and that such devices and components thereof had been and would be transported in interstate commerce." Superseding Indictment at 1.

For the reasons that follow, the Court holds that the statute does not apply to Hochman's conduct, and therefore, Hochman's motion to dismiss Count III and part of Count I must be granted.

### I.

Defendant Stephen Hochman is the owner and president of Testron, Inc. ("Testron"), an electronic components supplier. The Government alleges that between May 1, 1987 and December 31, 1989 Testron participated in the business of modifying General Instrument VideoCipher II satellite television receivers to enable home satellite dish owners to view encrypted pay-television programming without payment.

In particular, the Government alleges that Hochman solicited customers by advertising in various electronic trade journals and satellite television user publications, directed the customers to send the VideoCipher II units to his business in Floral Park, New York, and then for a fee of approximately $300 per unit, sent the units to a company called Linear Electronics in California where the units were modified.

On April 30, 1991, a grand jury sitting in this district returned a one-count indictment charging Hochman with violating 18 U.S.C. § 2512(1)(b). On April 23, 1992, the grand jury returned a three-count superseding indictment charging Hochman with conspiring to violate 18 U.S.C. § 2512(1)(b) and 47 U.S.C. § 605(e)(4) (Count One), as well as substantive violations of each section (Counts Two and Three).

Hochman submits that 18 U.S.C. § 2512(1)(b) does not apply to the conduct charged in the superseding indictment and thus he cannot be convicted of the substantive crime alleged in Count III or of conspiracy to commit the same in Count I.

### II.

Although the Second Circuit has not ruled on this question, other Circuits have, and until recently, they were evenly divided. In *United States v. McNutt*, 908 F.2d 561 (10th Cir.1990), and *United States v. Lande*, 968 F.2d 907 (9th Cir.1992), the Tenth and Ninth Circuits, respectively, held that § 2512(1)(b) prohibits the modification of descrambler units to enable unauthorized viewing of scrambled satellite pay-television. In contrast, the Eleventh Circuit in *United States v. Herring*, 933 F.2d 932 (11th Cir.1991), and the Eighth Circuit in *United States v. Hux*, 940 F.2d 314 (8th Cir.1991), held that § 2512(1)(b) does not prohibit such activity. The Eleventh Circuit, however, has since vacated its *Herring* opinion in *United States v. Herring*, 977 F.2d 1435 (11th Cir.1992) (ordering that the cause shall be reheard en banc), and the Eighth Circuit has overruled *Hux* in *United States v. Davis*, 978 F.2d 415 (8th Cir. 1992) (en banc). Notwithstanding these re-

cent developments, for the following reasons, this Court is not persuaded that § 2512(1)(b) clearly prohibits Hochman's alleged activity.

### III.

Originally enacted in 1968 as the "Wiretap Law," 18 U.S.C. § 2510 *et seq.* was amended in 1986 by the "Electronic Communications Privacy Act" ("ECPA"). This Court must decide whether the 1986 amendments to § 2512(1)(b) of the Wiretap Law made Hochman's conduct sanctionable under its terms.[1]

When interpreting a criminal statute, the Court "must pay close heed to language, legislative history, and purpose in order strictly to determine the scope of the conduct the enactment forbids." *Dowling v. United States,* 473 U.S. 207, 213, 105 S.Ct. 3127, 3131, 87 L.Ed.2d 152 (1985). The Supreme Court has emphasized that " ' "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." ' " *Williams v. United States,* 458 U.S. 279, 290, 102 S.Ct. 3088, 3094, 73 L.Ed.2d 767 (1982), quoting *United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971), which in turn quotes *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221–222, 73 S.Ct. 227, 229–230, 97 L.Ed. 260 (1952).

### A.

Applying that rule of construction, "we examine at the outset the statutory language." *Dowling,* 473 U.S. at 214, 105 S.Ct. at 3131. Section 2512(1)(b) requires, first, that defendant have intentionally manufactured, assembled, possessed, or sold "any electronic, mechanical, or other device"; second, that defendant know or

have reason to know "that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications"; and third, that defendant have transported such device or any component thereof in interstate or foreign commerce.

For two reasons, this language does not apply to the acts Hochman is alleged to have committed. First, the Court finds troublesome the language in the statute requiring the devices to be "primarily useful for the purpose of surreptitious interception." Admittedly, this is an element of the offense the Government must prove at trial, and therefore, it would be improper for the Court to make a determination at this point as to whether Hochman rendered the VideoCipher units "primarily useful for ... surreptitious interception." However, as Judge Gibson noted in his dissent in *Davis,* the appropriate inquiry under § 2512(1)(b) is not whether the descramblers *can* be used for surreptitious listening, but rather whether they are *primarily useful* for surreptitious listening. 978 F.2d at 421 (Gibson, J., dissenting) (emphasis added). The modified VideoCipher II units are similar (if not identical) to the units that are legitimately authorized to descramble particular satellite signals, *see Id.* at 416–417, and therefore, the modified units would not be "primarily useful for ... surreptitious listening."

The second and more compelling reason why this Court finds that the language of the statute does not apply to Hochman's alleged conduct is because when Congress amended the Wiretap Law in 1986, it made § 2512(1)(b) ambiguous by adding the term "electronic communications" without spelling out the devices to which the term refers. "Electronic communications" is defined in § 2510(12) as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmit-

---

**1.** Section 2512(1)(b) states in pertinent part that: [A]ny person who intentionally ... manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.

ted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system ..." The Government argues that because satellite television signals are carried by radio waves making up part of the electromagnetic spectrum, the statute applies to the interception of satellite television signals. However, the statute does not identify specifically satellite cable programming as a protected communication, and therefore, the statute "does not 'plainly and unmistakably' cover [Hochman's alleged] conduct." *Dowling*, 473 U.S. at 228, 105 S.Ct. at 3139, quoting *United States v. Lacher*, 134 U.S. 624, 628, 10 S.Ct. 625, 626, 33 L.Ed. 1080 (1890). In contrast, 47 U.S.C. § 605(e)(4) explicitly names satellite cable programming as an activity protected by the statute.

The Government refers to the fact that § 2511(4)(c) exempts "the interception of a satellite transmission that is not encrypted or scrambled" and argues that this indicates that it would have been unnecessary to include this exception if Congress had intended to exempt all satellite programming from the reach of the Wiretap Law and that the inclusion of this "narrow" exception establishes that satellite transmissions are contemplated by § 2512(1)(b). However, as Judge Gibson notes in his *Davis* dissent, this exception applies only to § 2511 (not § 2512), and § 2511 concerns the acts of intentionally intercepting, using, or disclosing wire, oral, or electronic communications, and not the acts of manufacturing or selling listening devices. Moreover, § 2511 does not require that the interception be "surreptitious." Thus, § 2511 is much broader than § 2512, making it necessary for Congress to limit its coverage by including the exception in § 2511(4)(c).

### B.

In light of the ambiguous language, the Court must now turn to the historical purpose of § 2512(1)(b). *See Dowling*, 473 U.S. at 218, 105 S.Ct. at 3134. An examination of the widely-accepted interpretation of the types of devices prohibited by the Wiretap Law before 1986 makes the Court even more reluctant to read "electronic communications" to include satellite pay-television.

Congress enacted the Wiretap Law in 1968 to prohibit "a relatively narrow category of devices whose principal use is likely to be for wiretapping or eavesdropping." S.Rep. No. 1097, 90th Cong., 2d Sess. 94–95 (1968), *reprinted in* 1968 U.S.Code Cong. & Admin.News 2112, 2183. The legislative history and the decisions of several courts confirm that the principal concern of Congress was to prevent the use of "spike mikes," disguised microphones, and wiretaps for the purpose of invading the privacy of business and personal communications. *See Id.; United States v. Schweihs*, 569 F.2d 965 (5th Cir.1978); *United States v. Wynn*, 633 F.Supp. 595, 602–605 (C.D.Ill. 1986); *United States v. Pritchard*, 773 F.2d 873, 878–79 (7th Cir.1985).

In light of this widely-accepted interpretation, one could easily read the definition of "electronic communications" in § 2510(12) to mean person-to-person or business communications transferred over the electromagnetic spectrum, and nothing more. Afterall, the Court must be mindful of the well-known principle of statutory construction that "if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Kelly v. Robinson*, 479 U.S. 36, 47, 107 S.Ct. 353, 359, 93 L.Ed.2d 216 (1986), quoting *Midlantic National Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986), which in turn quotes *Swarts v. Hammer*, 194 U.S. 441, 444, 24 S.Ct. 695, 696, 48 L.Ed. 1060 (1904). The failure of Congress in 1986 to expand the category of prohibited devices is presumed to be a ratification of the judicial construction.

Furthermore, it is curious as to why Congress would broaden the scope of the Wiretap Law to include cable piracy, particularly when there already existed a law designed to punish that activity. Indeed, 47 U.S.C. § 605(e)(4), which Congress enacted before the 1986 amendments to the Wiretap Law, states specifically:

Any person who manufactures, assembles, modifies, imports, exports, sells, or

distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the *unauthorized decryption of satellite cable programming* ... shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both (emphasis added).

It is doubtful that in amending the Wiretap Law in 1986 Congress intended to override or create an overlap with § 605. " 'It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum.' " *Traynor v. Turnage*, 485 U.S. 535, 547–548, 108 S.Ct. 1372, 1381, 99 L.Ed.2d 618 (1988), quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976). Here, the earlier statute, which specifically prohibits Hochman's alleged conduct, cannot be submerged by the more generalized later-enacted statute, particularly since, as discussed below, Congress referred to § 605 a number of times in the legislative history to the 1986 Wiretap Law and never indicated that § 605 was superseded.

### C.

An examination of the legislative history to the 1986 amendments persuades the Court that Congress did not intend to broaden the scope of the Wiretap Law by including in the definition of "electronic communications" satellite pay-television signals.

The rationale behind the 1986 amendments was the need "to update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies." S.Rep. No. 541, 99th Cong., 2d Sess. 1 (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 3555. In that vein, the Senate Report accompanying the 1986

amendments to the Wiretap Law lists and describes a large number of technologies affected by the amendments to § 2512(1)(b).[2] This list does not mention or discuss either the satellite pay-television industry or satellite signal descramblers.

To be sure, there are numerous inconsistencies in the legislative history. On the one hand, the Senate Report states "[t]he private viewing of satellite cable programming, network feeds and certain audio subcarriers will continue to be governed exclusively by [47 U.S.C. § 605], as amended, and not by [18 U.S.C. § 2510 *et seq.*]." *Id.* at 3576. On the other hand, the following colloquy in the House indicates that § 2512 does apply to the interception of satellite cable programming:

Mr. MOORHEAD: ... this legislation covers conduct that may be prohibited under [47 U.S.C. 605]. Do I understand correctly that the sanctions contained in this legislation would be imposed in addition to, and not instead of, those contained in section [605] ...?

Mr. KASTENMEIER: That is correct ... The private viewing of any other video transmission not otherwise excepted by section [605(b)] will be subject to action under both the Communications Act and this legislation.

132 Cong.Rec. H8985 (daily ed. Oct. 2, 1986). The same point was made in the Senate:

Mr. DANFORTH: This legislation covers some conduct that also is prohibited under [47 U.S.C. 605]. Do I understand correctly that the sanctions contained in this legislation would be imposed in addition to, and not instead of, those contained in section [605] ...?

Mr. MATHIAS: That is correct ... The penalties provided for in the ECPA are in addition to those which are provided by section [605] ... The private viewing of any other video transmission not otherwise excepted by section [605(b)] could be subject to action under both the Communications Act and this legislation.

---

**2.** The technologies listed and described by the Senate Report are electronic mail, computer-to-computer communications, electronic bulletin boards, microwave, cellular telephones, cordless telephones, electronic pagers, pen registers/trap

and trace devices, electronic tracking devices (transponders), and remote computer services. S.Rep. No. 541, 99th Cong., 2d Sess. 8–11 (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 3555, 3562–3565.

132 Cong.Rec. S14452–53 (daily ed. Oct. 1, 1986).

The contradictions in the legislative history to § 2512(1)(b), combined with the vague statutory language and the fact that Hochman's alleged conduct is not consistent with the type of conduct the Wiretap law was designed to prohibit, indicates that "Congress has not spoken with the requisite clarity." *Dowling*, 473 U.S. at 229, 105 S.Ct. at 3139. It is therefore necessary for the Court to invoke "the 'time-honored interpretive guideline' that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *Id.*, quoting *Liparota v. United States*, 471 U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985), which in turn quotes *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971).

### IV.

Another factor against reading § 2512(1)(b) in the manner suggested by the Government is "[t]he assumption ... that Congress ordinarily does not intend to punish the same offense under two different statutes." *Ball v. United States*, 470 U.S. 856, 861, 105 S.Ct. 1668, 1671, 84 L.Ed.2d 740 (1985). While the Government has broad discretion "to select the charges to be brought in a particular case," *Id.* at 859, 105 S.Ct. at 1671, in determining whether Congress intended the same conduct to be punishable under two criminal provisions the District Court must be guided by the test of statutory construction stated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). "The appropriate inquiry under *Blockburger* is 'whether each provision requires proof of a fact which the other does not.'" *Ball*, 470 U.S. at 861, 105 S.Ct. at 1671, quoting *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182.

In Hochman's case, neither § 2512(1)(b) nor § 605(e) requires proof of an additional fact which the other does not. If the Court were to read "electronic communications" to include satellite cable programming, the way the Government suggests, then the two statutes would be identical, and under *Blockburger* Hochman may not be convicted for violating both statutes.

Parenthetically, we must be ever mindful of the fact that we are dealing here with two criminal statutes, one specifying conduct that is felonious and the other specifying conduct that amounts only to a misdemeanor.[3] Both statutes must be strictly construed and any doubt as to scope, purpose or intent must be resolved in favor of a defendant charged with violating the same. Section 605(e) specifically and unequivocally describes and prohibits the conduct complained of in this case, whereas § 2512(1)(b) only at best arguably does so. A defendant in a criminal case should not be held accountable as a felon for conduct which is only arguably felonious, particularly when it is specifically stated to be a misdemeanor at the time the conduct is alleged to have occurred.

### V.

A final and dispositive factor against reading § 2512(1)(b) to include Hochman's alleged conduct is the fact that in addition to § 605(e), another statute, 18 U.S.C. § 1367, specifically proscribes the alleged conduct.

The Senate Report accompanying the 1986 amendments to the Wiretap Law states:

> [I]n response to the recent Captain Midnight incident, in which an individual in Florida interfered with the transmission of an HBO program being relayed by satellite, the subcommittee included in the bill language to address deliberate or

---

**3.** It is true that currently a violation of either statute constitutes a felony, but the Government charges Hochman for acts he allegedly committed between May 1, 1987 and December 31, 1989, and for most of this period (from May 1, 1987 to January 1, 1989), if Hochman had looked at the statutes he is charged with violating, he would have noticed that the alleged conduct was a misdemeanor under § 605 but a

felony under § 2512(1)(b) (a term of imprisonment of up to five years). Although Congress amended § 605, effective January 1, 1989, extending the maximum term of imprisonment to five years, for most of the period during which the Government alleges Hochman participated in illegal conduct, the penalty provisions differed significantly.

malicious interference with satellite transmissions. S.Rep. No. 541, 99th Cong., 2d Sess. 6 (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 3560. This seems to suggest that the interference with satellite cable programming was an impetus to proposing the 1986 amendments to the Wiretap Law. However, although this quote from the Senate Report purports to include language in the law addressing "deliberate or malicious interference with satellite transmissions," this language does not appear in the final version of amended § 2512(1)(b). But this language does appear in 18 U.S.C. § 1367(a) which states:

> Whoever, without the authority of the satellite operator, *intentionally or maliciously interferes* with the authorized operation of a communications ... *satellite* or obstructs or hinders any *satellite transmission* shall be fined in accordance with this title or imprisoned not more than ten years or both. (emphasis added).

Moreover, the legislative history to § 1367 refers to 1986 U.S.Code Cong. and Adm. News, p. 3555, which is the Senate Report to the 1986 amendments to the Wiretap Law, where the language quoted above appears.

This further supports this Court's conclusion that the Government is mistaken when it argues that a purpose behind the 1986 amendments to § 2512(1)(b) was to address interference with satellite transmissions.

## VI.

As a final matter, the Court addresses the remainder of Hochman's motion requesting the following: a bill of particulars; "early compliance by the Government with the Jencks Act/Brady/Agurs/Giglio"; compliance with Hochman's Rule 16 demand; and "notice of the Government's intention to use evidence which may be subject to a motion to suppress." In response to Hochman's requests, the Government notes that it has already made available all discovery materials, documents and other tangible evidence in its possession which "plainly afford the defendant all of the information he seeks." Government's Memorandum in Opposition to the Defen-

dant's Omnibus Motion at 17. Moreover, the Government notes that it is "aware of its continuing duty to disclose discoverable information," and if before or during trial, the Government should become aware "of any such information not previously disclosed, it will promptly notify defendant and/or the Court of such additional information or material." *Id.* at 18.

To the extent that the Government has disclosed all discoverable information within its knowledge or possession, Hochman's requests are denied. However, the Court advises the Government to continue to observe its duty to provide all discoverable information.

## VII.

In sum, because the Court cannot with confidence conclude that the Wiretap Law sanctioned Hochman's conduct, the Court grants Hochman's motion to dismiss Count III and part of Count I of the superseding indictment. Hochman's additional requests for discovery information are denied.