**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Stephen L. SHRIVER, Joseph R. Denman, Harry Lawrence Daly, and Joseph D. Fones, Defendants–Appellees.**

No. 92–1510.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1992.

Decided Nov. 23, 1992.

As Amended on Grant of Rehearing
April 2, 1993.

Rodger A. Heaton, Elizabeth L. Collins (argued), Asst. U.S. Attys., Office of the U.S. Atty., Springfield, Ill., for U.S.

Howard W. Feldman, Feldman & Wasser, Springfield, Ill., for Stephen L. Shriver.

Steven Skelton, Bloomington, Ill., for Joseph R. Denman.

Steven Nardulli, Stratton, Dobbs & Nardulli, Springfield, Ill., for Harry L. Daley.

Bruce D. Locher, Springfield, Ill., argued for Joseph D. Fones.

Before BAUER, Chief Judge, MANION, Circuit Judge, and MOODY, District Judge.[1]

MOODY, District Judge.

On September 26, 1991, defendants-appellees were indicted under certain provisions of the wiretap laws,[2] specifically 18 U.S.C. § 2511(1), 18 U.S.C. § 2512(1)(a) and (b), and Section 705(a) of the Communications Act of 1934, 47 U.S.C. § 605(a), for conspiring to manufacture, sell and assist others in the use of electronic devices commonly known as "modified descramblers".[3] On December 19, 1991, the government, plaintiff-appellant, obtained a superseding indictment against defendants, containing substantially the same charges as those contained in the original indictment. Defendants then moved to dismiss the counts of the superseding indictment arising out of the wiretap laws, on the ground that the conduct with which defendants were charged did not violate either § 2511 or § 2512. Prior to trial, the district court[4] granted defendants' motions and dismissed all counts of the superseding indictment charging defendants with violations of 18 U.S.C. §§ 2511 and 2512, 782 F.Supp. 408. The district court reasoned that, as a matter of law, the conduct with which defendants were charged—the manufacture and sale of modified descramblers—is not covered by the wiretap laws, and that such conduct is governed exclusively by Section 705 of the Communications Act of 1934, 42 U.S.C. § 605. The government has now appealed that order.[5]

The government argues that the district court improperly dismissed before trial the counts arising out of the wiretap laws. The government contends that it was entitled to a trial on those counts, since it is a factual issue as to whether defendants' alleged conduct falls within the scope of the wiretap laws. Had a trial occurred, the government contends, it would have proven through expert testimony that, in fact, defendants violated § 2511 and § 2512. Defendants, on the other hand, argue that the district court properly granted their motions to dismiss, for, to them, the language and legislative history of the wiretap laws clearly demonstrate that Congress never intended the wiretap laws to cover modified descramblers. Thus, defendants contend, no trial on the matter was necessary, because, as a matter of law, neither § 2511 nor § 2512 applies to the conduct alleged in the superseding indictment. For the following reasons, we reverse the opinion of the district court and remand with instructions for an evidentiary hearing in accordance with the terms of this opinion.

This appeal is one of first impression for this court. It involves the question of whether the wiretap laws cover the manufacture and sale of modified descramblers. Modified descramblers are electronic devices that intercept satellite transmissions to privately-owned, home satellite dishes. They enable their users to receive clear reception of television programs without having to pay the television programmer a subscription fee, and, as gleaned from the mounting information now available to the court, modified descramblers in general operate as follows. Pay television programming is transmitted by satellite in an encrypted, scrambled format, so that nonsubscribers cannot gain free access thereto.

---

1. The Honorable James T. Moody, United States District Court Judge for the Northern District of Indiana, sitting by designation.

2. 18 U.S.C. § 2510 *et seq.*, as amended by the Electronic Communications Privacy Act of 1986, Pub.L. 99–508, 100 Stat. 1849–1853 (1986).

3. The indictment also charged defendants with substantive violations of § 2512(1)(b), as well as one count of wire fraud in violation of 18 U.S.C.

§ 1343. The wire fraud charge is not at issue here.

4. The Honorable Richard Mills, District Judge for the Central District of Illinois.

5. The district court continued the trial of the remaining counts of the superseding indictment, namely the counts arising out of 47 U.S.C. § 605(a) and 18 U.S.C. § 1343, pending this appeal.

To receive the programming, one can either subscribe through a local, cable television company, or one can own a satellite dish and purchase the programming directly from the program provider.

In either case, though, a descrambler is necessary to descramble the programs for which the subscriber has paid. Owners of satellite dishes must purchase what is called· a home satellite television descrambler, an electronic device that contains what is called the Video Cypher II circuit board. ·General Instruments, Inc. makes these Video Cypher II descramblers, and each one has a unique address, programmed onto computer chips contained on the circuit board. The address allows the owner of a satellite dish to view those encrypted television programs to which the owner has subscribed.

These Video Cypher II descramblers, though, can be modified, so as to allow free and clear reception of encrypted programs not subscribed to. The descramblers are modified by removing and replacing the unique address with a "working address", an address identical to that of another descrambler, the latter of which is programmed to descramble a greater number of encrypted programs. The cloning process is done simply by copying the address of one descrambler onto blank computer chips and then installing those chips onto the circuit board of another descrambler.

Thus, any number of descramblers can be given the same address, and the owners of such modified descramblers can receive additional, encrypted programs without having to pay the programmer for them. Moreover, the programmer is not aware that the scrambled signals sent to a descrambler with a unique address are being unscrambled not only by that descrambler but also by any and all other modified descramblers using the same, cloned address. Understandably, owners and potential buyers of home satellite dishes are willing to pay· a premium for these modified descramblers, since the device allows the owner to view encrypted broadcasts without paying a subscription fee to the programmer.

Defendants were charged with manufacturing and selling these modified descramblers, in violation of both the wiretap laws, specifically 18 U.S.C. §§ 2511 and 2512, and Section 705(a) of the Communications Act of 1934, 47 U.S.C. § 605(a). Everyone agrees that defendants were properly charged under Section 705(a) of the Communications Act of 1934; the law is clear that the· alleged conduct—assisting others in the unauthorized interception of scrambled, subscription television programming—is covered by 47 U.S.C. § 605(a). *ON/TV of Chicago v. Julien,* 763 F.2d 839, 843. (7th Cir.1985); *see also United States v. Scott,* 783 F.Supp. 280, 282 (N.D.Miss. 1992)˙ (§ 605(a) prohibits the unauthorized interception of satellite transmissions to home satellite dishes through the use of modified Video Cypher II descramblers).[6]

---

**6.** Section 605(a) states, in pertinent part, that, [n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information contained therein) for his own benefit or for the benefit of another not entitled thereto....

47 U.S.C. § 605(a). Certain conduct is excepted from the prohibitions of Section 605(a).

The provisions of subsection (a) of this section shall not apply to the interception or· receipt by any individual, or the assisting (including the manufacture or sale) of· such interception or receipt, of any satellite cable programming for private viewing if—

(1) the programming involved is not encrypted; and

(2)(A) a marketing system is not established under which—

(i) an agent or agents have been lawfully designated for the purpose of authorizing private viewing by individuals, and

(ii) such authorization is available to the individual involved from the appropriate agent or agents; or

(B) a marketing system described in subparagraph (A) is established and the individuals receiving such programming has obtained authorization for private viewing under that system.

47 U.S.C. § 605(b). All agree, though, that none of these exceptions apply to this case, since the satellite transmissions intercepted by home satellite· dishes equipped with modified de-

Thus, the only question on appeal is whether that same conduct falls within the meaning and scope of 18 U.S.C. §§ 2511 and/or 2512.[7]

■ This is a case of pure statutory interpretation, and, as such, the court of appeals must review the district court's interpretation of the applicable statutes *de novo. United States v. Powell,* 929 F.2d 1190, 1193 (7th Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 584, 116 L.Ed.2d 609 (1991); *United States v. Montoya,* 827 F.2d 143, 146 (7th Cir.1987). The general rule of statutory interpretation is that one must first look to the language of the statute and assume that its plain meaning "accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985). 'When the language of the statute is lucid, we examine the legislative history only to see whether it reflects "a clearly expressed legislative intention to the contrary."' *United States v. Doherty,* 969 F.2d 425, 429 (7th Cir.1992) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Thus, the legislative history of a statute is of weighty import only when the statute is not clear or when the application of its "plain language produces absurd or unjust results." *Trustees of Iron Workers Local 473 Pension Trust v. Allied Products Corp.,* 872 F.2d 208, 213 (7th Cir.1989).

We therefore turn to the language of the wiretap laws, specifically that of §§ 2511 and 2512, to see whether its plain meaning, if one exists, applies to modified descramblers. First, all agree that both § 2511 and § 2512 apply to electronic communications of the kind involved in this case. In 1986, Congress amended the wiretap laws to include electronic communications, with the idea in mind that the wiretap laws had to be updated so as to take into account new computer and telecommunication technologies, including satellite transmissions. 1986 U.S.Cong. & Admin.News at 3555; *United States v. Herring,* 933 F.2d 932, 935 (11th Cir.1991). The only question is whether, in expanding the scope of the wiretap laws to cover satellite transmissions, Congress meant to prohibit the interception thereof by modified descramblers.

■ First is § 2511. The language of § 2511 is clear: it is unlawful to intercept or procure another to intercept electronic communications without prior authorization. Furthermore, one need only refer to the statute itself for the precise meaning of the terms used therein. "[I]ntercept"

---

scramblers are encrypted and their interception is unauthorized.

7. Section 2511 states, in pertinent part, that, [e]xcept as otherwise specifically provided in this chapter any person who—
    (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication ... shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5). 18 U.S.C. § 2511(2)(a). The provision, though, goes on to say, in pertinent part, that,
    [i]t shall not be unlawful under this chapter or chapter 121 of this title for any person—
      (i) to intercept or access an electronic communication made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public;....
      (iii) to engage in any conduct which—
    ....
    (II) is excepted from the application of section 705(a) of the Communication Act of 1934 by section 705(b) of that Act....
18 U.S.C. § 2511(2)(g)(i) and (iii).

Section 2512 states, in pertinent part, that, [e]xcept as otherwise specifically provided in this chapter, any person who intentionally—
    (a) sends through the mail, or sends or carries in interstate or foreign commerce, any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications;
    (b) manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce ...
shall be fined not more than $10,000 or imprisoned not more than five years, or both. 18 U.S.C. § 2512(1)(a) and (b).

means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). An "electronic, mechanical, or other device" is defined as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication...." 18 U.S.C. § 2510(5).

Based on this unambiguous language, one can only conclude that the use or encouragement of use of modified descramblers, if intentional, violates § 2511. *Accord United States v. Lande*, 968 F.2d 907, 910 (9th Cir.1992). As stated above, all agree that encrypted satellite transmissions to home satellite dishes are "electronic communications" within the meaning of the wiretap laws.[8] Moreover, it is undisputed that modified descramblers are devices that, when used, "intercept" such scrambled, electronic communications without prior authorization.

Finally, the type of interception involved in this case does not fall within the types of interceptions specifically excepted from the prohibitions of § 2511. Essentially, § 2511 does not apply to interceptions of "unscrambled, unencrypted radio communications" that are either accessible to the general public or unencrypted and subject to a marketing system pursuant to which the interceptor has received authorization for private viewing. 1986 U.S.Cong. & Admin.News at 3568; 18 U.S.C. § 2511(2)(g)(i) and (iii), note 7, *supra*.[9] Whereas, if the intercepted "radio communication is scrambled or encrypted ... the conduct remains

punishable" under § 2511. 1986 U.S.Cong. & Admin.News at 3575. This case involves this latter situation; modified descramblers intercept encrypted satellite transmissions. Consequently, under the plain meaning of § 2511, the intentional use of modified descramblers is prohibited, and there is no need to resort to the legislative history of the statute, unless it contains an explicit statement to the contrary.

Defendants argue that the legislative history of the wiretap laws does in fact contain an explicit statement to the contrary. They point to the following statement contained in the Senate Report accompanying the Electronic Communications Privacy Act of 1986, the act which amended the wiretap laws to include electronic communications:

> The private viewing of satellite cable programming, network feeds and certain audio subcarriers will continue to be governed exclusively by section 705 of the Communications Act of 1935, as amended, and not by chapter 119 of Title 18 of the United States Code [the wiretap laws].

1986 U.S.Cong. & Admin.News at 3576. Defendants read this to mean that Section 705 of the Communications Act of 1934, 47 U.S.C. § 605, is the only criminal statute under which the government can prevent the interception of encrypted satellite transmissions by modified descramblers, and, therefore, that the government improperly charged defendants under both the wiretap laws and the Communications Act of 1934. The district court agreed.

---

**8.** *See* 18 U.S.C. § 2510(12), in which the term "electronic communications" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce."

**9.** In the words of Congress, "scrambled or encrypted radio communications are not readily accessible to the general public.... To "encrypt" or to "scramble" means to convert the signal into unintelligible form by means intended to protect the contents of a communication from the unintended recipients." 1986 U.S.Cong. & Admin.News at 3569. *See also* 18

U.S.C. § 2510(16), which states that '"readily accessible to the general public" means, with respect to a radio communication, that such communication is not ... scrambled or encrypted....' .

The exception contained in § 2511(2)(g)(iii) is created by reference to the Communications Act of 1934. The provision states that communications excepted from the application of Section 705(a) of the Communications Act of 1934 by Section 705(b) of that Act shall also be excepted from the application of § 2511. 18 U.S.C. § 2511(1)(g)(iii). Section 705(b) of the Communications Act of 1934 states that it shall not be unlawful to intercept or receive satellite programming which is either unencrypted or authorized. 47 U.S.C. § 605(b); *see* note 6, *supra*.

We, though, see it differently and find that there is nothing in the legislative history to contradict the plain meaning of § 2511. The statement relied upon by defendants and the district court must be read not only in the context of the legislative history of the wiretap laws as a whole, but also in light of the statutory scheme for punishing those who violate § 2511. When that is done, it becomes immediately apparent that Congress, in enacting the 1986 amendments to the wiretap laws, intended to punish certain interceptors of satellite transmissions to home satellite dishes, but not all. Congress was well aware that the technology of satellite dishes makes it possible for their owners unintentionally to pick up certain types of unscrambled satellite transmissions, such as network feeds or "backhauls".[10] Consequently, Congress wanted to make it clear that it did not intend to impose criminal liability on the innocent interceptors of these types of unencrypted signals. 132 Cong.Rec. S14441–04 (daily ed. Oct. 1, 1986).[11] Instead, criminal liability would attach to only the intentional interception of encrypted satellite transmissions, see 18 U.S.C. § 2511(4)(a), civil penalties would attach to only the intentional interception of unencrypted satellite transmissions or network feeds, see 18 U.S.C. § 2511(4)(c) and § 2511(5)(a), and no penalties at all would attach to the unintentional interception of unencrypted satellite transmissions, unless the interceptor was a repeat offender. See 18 U.S.C. § 2511(5)(a)(ii).

This is the context in which one must read the statement cited by defendants and the district court. Congress did not intend to exempt from the prohibitions of the wiretap laws all interceptions of satellite transmissions by owners of home satellite dishes. Congress only meant to exempt those interceptions that are unintentional or authorized, conduct which happened already to be exempted from criminal liability under Section 705(b) of the Communications Act of 1934, 47 U.S.C. § 605(b). Thus, when Congress stated that the "private viewing of satellite cable programming, network feeds and certain audio subcarriers will continue to be governed exclusively by" § 605, Congress must have been referring to only unintentional interceptions by home viewers of unscrambled satellite communications. See Statement of Congressman Kastenmeier (underlined portion), note 12, *infra*. As for intentional interceptions, the punishment scheme outlined in § 2511(4) and (5) shows that the wiretap laws apply in full force, even though § 605(a) applies to the same conduct.[12]

---

**10.** Network feeds or "backhauls" are signals containing unedited, television programs, en route from an affiliate television station, at which the program is made, to a network's central station, from which the edited program ultimately is broadcast.

**11.** Immediately preceding the passage of the Electronic Communications Privacy Act of 1986, Senator Mathias commented on the problem that home satellite dishes pose, given their capacity to intercept unscrambled but privately transmitted radio signals. Senator Mathias stated that "[t]his amendment [to the wiretap laws] contains substantial barriers to imposing liability on satellite dish owners: the exemption for cable programming and network feeds, for example, and the requirement of an intentional interception." 132 Cong.Rec. S14441–04 (Daily ed. October 1, 1986).

Senator Thurmond's remarks on the same day are equally illustrative:

Concern has been expressed in the committee that such a provision may unfairly subject unknowing satellite dish owners to criminal liability. This amendment responds to this concern by providing that a person must intentionally intercept [unscrambled satellite] communications to be subject to penalties, and those penalties will be civil only.

*Id.* As are the statements of Senator Grassley: First, we have affirmed the right of dish users to listen to all unencrypted audio subcarriers that are redistributed by facilities open to the public ... Further, we have decriminalized the private noncommercial viewing of unscrambled satellite video programming that would have previously resulted in the imposition of sanctions on people who simply view television in the privacy of their own homes.... The new sections regarding home dish viewing of private unencrypted satellite video transmissions provide for injunctive relief in the case of intentional viewing of such signals.

*Id.*

**12.** The Congressional Record supports this conclusion. The following discussion took place in the Senate immediately preceding the passage of the Electronic Communications Privacy Act

Based on the foregoing, the court concludes that there is nothing in the legislative history of the wiretap laws to contradict the plain meaning of § 2511. The intentional and unauthorized interception of or the intentional and unauthorized procurement of another person to intercept encrypted satellite transmissions is illegal under § 2511, and modified descramblers are designed for the specific purpose of carrying out such illegal interceptions. Accordingly, § 2511 applies directly to the manufacture and sale of modified descramblers, and the district court improperly dismissed the counts of the superseding indictment charging defendants with violating § 2511, regardless of defendants' potential liability under Section 705 of the Communications Act of 1934 for the same alleged conduct.[13]

■ We next address the applicability of § 2512 to modified descramblers. Again, there is no dispute that the type of communications involved in this case—encrypted satellite transmissions to home television satellite dishes—constitute electronic communications within the meaning of the wiretap laws, and that the type of device at issue is designed to intercept those electronic communications. The only bone of contention is whether the design of the modified descramblers allegedly manufactured and sold by defendants "renders [the descramblers] primarily useful for the purpose of the surreptitious interception of . . . electronic communications." 18 U.S.C. § 2512(1)(a) and (b). The government maintains that that is just the case, since television programmers are unaware that their encrypted, satellite transmissions are being received by home satellite dishes equipped with these modified descramblers, and since these modified descramblers are primarily useful for the piracy of subscription-only, television programs.

Defendants, on the other hand, argue that the language of § 2512 does not cover modified descramblers, since their design does not render them primarily useful for the surreptitious interception of electronic communications. Defendants acknowledge the illegitimate purpose of these modified descramblers. Nevertheless, they argue that the design of modified descramblers is so similar to the design of their legitimate counterparts that it cannot possibly render

of 1986, on the issue of whether both the wiretap laws, as amended by that Act, and Section 705 of the Communications Act of 1934, 47 U.S.C. § 605, cover the interception of satellite communications by owners of home satellite dishes:

> [SENATOR] DANFORTH. This legislation [the Electronic Communications Privacy Act] covers some conduct that also is prohibited under section 705 of the Communications Act of 1934. Do I understand correctly that the sanctions contained in this legislation would be imposed in addition to, and not instead of, those contained in section 705 of the Communications Act?
>
> [SENATOR] MATHIAS. That is correct.... The penalties provided for in the Electronic Communications Privacy Act are in addition to those which are provided by section 705 of the Communications Act.

132 Cong.Rec. S14441–04 (Daily ed. October 1, 1986).

And, apparently, the House came to the same conclusion:

> [REPRESENTATIVE] MOORHEAD..... Do I understand correctly that the sanctions contained in this legislation would be imposed in addition to, and not instead of, those contained in section 705 and other sections of the Communications Act?

> [REPRESENTATIVE] KASTENMEIER. That is correct. This legislation is not intended to alter any rights or liability for conduct that is also covered by section 705 or other sections of the Communications Act. Similarly, it is not intended to authorize any conduct which otherwise would be prohibited by section 705 or other sections. *It should be noted that we do not provide criminal liability for noncommercial, private viewing of unscrambled network feeds to affiliates by the owners of home satellite dishes. Accountability for that conduct will be determined solely under section 705 of the Communications Act. The private viewing of any other video transmissions not otherwise excepted by section 705(b) will be subject to action under both the Communications Act and this legislation.*

132 Cong.Rec. H8977–02 (Daily ed. October 2, 1986) (emphasis added).

13. As the court in *Lande* noted, "[w]hether the government may obtain *convictions* for the same act of satellite piracy under both the ECPA [Electronic Communications Privacy Act] and section 605 is not before us. (citations omitted) [Defendants] challenge only the applicability of the ECPA to [their] conduct, and that is the only issue we decide." *Lande*, 968 F.2d at 913 n. 13 (emphasis included).

the devices *primarily* useful for the unauthorized interception of satellite communications. In other words, despite its illegitimate purpose, the modified descrambler still is primarily useful for the legitimate reception of satellite transmissions, that is, transmissions for which the owner has already paid or transmissions the reception of which does not require authorization. *See United States v. Herring*, 933 F.2d 932, 934 (11th Cir.1991).

The circuits have split over this precise issue: whether § 2512, as amended, covers modified descramblers owned by or sold to owners of home satellite dishes. *Compare United States v. Herring*, 933 F.2d 932 (11th Cir.1991) (no), with *United States v. McNutt*, 908 F.2d 561 (10th Cir.1990) (yes), *United States v. Splawn*, 963 F.2d 295 (10th Cir.1992) (affirming holding in *McNutt* ), *United States v. Davis*, 978 F.2d 415 (8th Cir.1992) (yes) (overruling *United States v. Hux*, 940 F.2d 314 (8th Cir.1991)), and *United States v. Lande*, 968 F.2d 907 (9th Cir.1992) (yes). The *Hux* and *Herring* courts reasoned that neither the language nor the legislative history of § 2512 contemplates modified descramblers, since their design is too similar to the design of their legitimate counterparts, and since Section 705 of the Communications Act of 1934 already prohibits such devices. The district court adopted this reasoning when it dismissed the counts of the superseding indictment arising out of § 2512. On the other hand, the *McNutt* and *Lande* courts found that the language and intent of § 2512 unambiguously prohibits modified descramblers, despite the fact that § 605 prohibits them as well.

We take a slightly different approach to the problem than that taken by the other circuits. As originally enacted, § 2512 was designed to prohibit

> a relatively narrow category of devices whose principal use is likely to be for wiretapping or eavesdropping.... To be prohibited, the device would also have to possess attributes that give predominance to the surreptitious character of its use, such as the spike in the case of the spike mike or the disguised shape in

the case of a martini olive transmitter....

1968 U.S.Code Cong. & Admin.News at 2112, 2183–84; *see also United States v. Pritchard*, 773 F.2d 873, 878 (7th Cir.1985). The legislative history and the "statutory language [of § 2512] reflects a careful and studied congressional decision to leave untouched the production, distribution, and possession of electronic equipment designed for regular use in varied unsurreptitious activities, even though the equipment is capable of being used in a surreptitious manner." *United States v. Schweihs*, 569 F.2d 965, 969 (5th Cir.1978).

Like § 2511, Congress expanded the scope of § 2512 in 1986 to include electronic communications. Congress, though, left untouched the rest of the statute, including the terms "surreptitiously" and "primarily" that are found in both § 2512(1)(a) and (b). Therefore, as it exists today, § 2512 still pertains to only a small category of electronic devices the designs of which render them sufficiently invasive or devious in purpose to warrant criminal prosecution, and the only question left for the court to decide is whether that small category of devices includes the devices at issue here— the modified descramblers allegedly manufactured and sold by defendants.

The language of § 2512 is like that of § 2511, clear and unambiguous. A device is illegal under either § 2512(1)(a) or (b) if its design renders it primarily useful for the surreptitious interception of electronic communications. *Pritchard*, 773 F.2d at 878. Moreover, all seem to agree that modified descramblers, when used, are surreptitious, since their purpose is to pirate encrypted, satellite-transmitted television programs. The only problem is that both § 2512(1)(a) and (b) contain the qualifying term "primarily", a word that forces the reader to inquire into the quantum or degree to which the design renders the device illegitimate. In other words, not all devices with the capacity to intercept communications are prohibited; § 2512 applies to only "a relatively narrow category of devices whose principal use is likely to be for wiretapping or eavesdropping [or intercepting electronic communications] ... [and]

[t]he crucial test is whether the design of the device renders it *primarily* useful for *surreptitious* listening." 1968 U.S.Code Cong. & Admin.News at 2183 (emphasis in original).

Thus, § 2512 requires a factual inquiry into the actual design of the device allegedly manufactured or sold by a defendant charged under the statute, and, without such an inquiry, it would be impossible to determine whether the device is or is not covered by § 2512. "Obviously, the sort of judgment called for [by § 2512] in close cases would warrant the use of expert testimony," *id.*, and, in light of the varying outcomes among the circuits on this precise issue, this case is no exception.[14] For example, in *Herring*, the court examined the evidence introduced at trial on the design of the modified descramblers at issue, including the expert testimony, and the court concluded that § 2512 did not cover those particular devices, because seventy-five percent of their software was for legitimate, nonsurreptitious uses, and only the remaining twenty-five percent of the software enabled the descramblers to intercept encrypted, satellite transmissions not already paid for. *Herring*, 933 F.2d at 934.

In *Lande*, the court engaged in a similar examination of the specific characteristics of the design of the modified descramblers at issue, but the court came to the opposite conclusion of the court in *Herring*.[15] The *Lande* court found that the design of the modified descramblers with which the defendants were charged with manufacturing and selling did in fact fall within the language of § 2512, since the device, as modified, "served no purpose except to allow surreptitious interception." *Lande*, 968 F.2d at 910. The court based its conclusion on the fact that, instead of being a clone of legitimate descramblers, the modified descramblers "contained a new computer chip that caused a unit to descramble programming from every pay television station, not just from those stations the electronic "address" was authorized to receive." *Id.* at 911. The court, though, was careful to point out that its conclusion was based on the specific characteristics of the design of the devices before it; had the modified descramblers been mere clones of their legitimate counterparts, the court stated, their criminality under § 2512 would not have been so readily apparent. *Id.*

Thus, the legality of the device under either § 2512(1)(a) or (b) depends upon a factual inquiry into the degree to which the components of the device render it illegitimate. Moreover, that inquiry necessarily depends on the particular characteristics of the device at issue, as well as any expert testimony available on the matter. And, disagreement over the evidence is probable. Accordingly, the applicability of § 2512 to a particular device is a question of fact that must go to trial; the issue cannot be resolved on a pretrial motion to dismiss unless the facts underlying it undisputedly negate coverage. *United States v. Yasak*, 884 F.2d 996, 1001 n. 3 (7th Cir.1989) (claim raised on pretrial motion to dismiss must go to jury if claim is substantially intertwined with the evidence concerning the alleged offense); *see also United States v. Covington*, 395 U.S. 57, 60, 89 S.Ct. 1559, 1561, 23 L.Ed.2d 94, 99 (1969) (dismissal of

---

**14.** Our decision in *Pritchard* also emphasized the importance of expert testimony when faced with a device allegedly violative of either § 2512(1)(a) or (b). In *Pritchard*, the court upheld a conviction under § 2512(1)(b) for possession of a device described as "a small gray metal box with an attached rubber suction cup and earphone and telephone hookup." *Id.* at 879. Apparently, the device was designed so that its user could listen through walls, doors and windows. The court's decision focused on the government's expert witness, who testified that he had examined and tested the device and concluded that the device was primarily useful for the surreptitious interception of either wire or oral communications. *Id.* In contrast, the court found the testimony of the defendant's witness "of little assistance ... on the issue of the primary purpose of the device," since the witness was not an expert on electronics. *Id.*

**15.** Unlike the *Herring* court, the *Lande* court came to its conclusion prior to trial on a motion to dismiss. The *Lande* court, therefore, did not have the benefit of a trial record with expert testimony to assist it in its factual determinations. Nevertheless, the *Lande* opinion contains detailed findings about the design of the modified descramblers at issue, indicating that the court carefully examined the devices before ruling on their legality under § 2512.

count of indictment proper if trial on facts surrounding offense charged would be of no assistance in determining validity of defense raised on pretrial motion) *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448,1452 (9th Cir.1986) (district court can decide issue before trial only if it is entirely segregable from the evidence to be presented at trial); *United States v. Jones*, 542 F.2d 661, 664–65 (6th Cir.1976) (pretrial dismissal of counts of indictment proper where facts necessary to decide questions of law undisputed and trial of substantive charges would not substantially assist the court in deciding the legal issue raised by motion to dismiss).

Yet, below, no trial was had on whether § 2512 applies to the descramblers allegedly manufactured and sold by defendants, i.e., whether in fact those devices are primarily useful for the surreptitious interception of electronic communications. Instead, on a pretrial motion to dismiss, the district court simply adopted the reasoning of the *Hux* and *Herring* opinions and held that, as a matter of law, the modified descramblers allegedly manufactured and sold by defendants do not fall within the purview of either § 2512 or § 2511. In rendering its ruling, the district court did not analyze the particular characteristics of the devices in question. Nor did the district court employ expert testimony to assist it in its decision. Furthermore, the district court ruled on defendants' motion to dismiss when the parties strongly disagreed over the degree to which the devices in question are illegitimate. The court, therefore, invaded the province of the jury by ruling as a matter of law on a disputed issue of fact. The issue goes to an essential element of the crime charged, and it should have been left for trial. *Shortt*, 785 F.2d at 1452.

Thus, a jury must decide whether the descramblers allegedly manufactured and sold by defendants violate both 18 U.S.C. § 2511 and 18 U.S.C. § 2512. The district court improperly resolved both of these questions before trial. The judgment of the district court is REVERSED, and the case is REMANDED for trial.