**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**UNITED SERVICES AUTOMOBILE**
**ASSOCIATION, Defendant–**
**Appellant.**

No. 92–2121.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 26, 1993.

Decided Sept. 13, 1993.

Gerald M. Burke, Office of the U.S. Atty., Civ. Div., Fairview Heights, IL (argued), for plaintiff-appellee.

Bruce L. Carmen (argued), D. Kendall Griffith, Hinshaw & Culbertson, Chicago, IL, for defendant-appellant.

Before POSNER and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

RIPPLE, Circuit Judge.

The United Services Automobile Association (USAA) appeals from an order directing it to reimburse the United States of America $7,660.50 for medical care the government rendered three military retirees or dependents. Judgment was entered pursuant to the pre–1990 version of 10 U.S.C. § 1095, which obligates third-party payers to reimburse the government when it provides their beneficiaries with medical care. For the reasons that follow, we reverse the judgment of the district court.

## I

## BACKGROUND

### A. *Facts*

Five people who were either military retirees or military dependents were injured in separate, unrelated automobile accidents. All five were covered by automobile insurance policies issued by USAA. As part of the coverage under the "Easy Reading Auto Policy" issued, USAA was obligated to cover its insureds for medical expenses incurred in automobile accidents, with some exclusions, up to a specified liability limit. The policy specifically excluded the liability of USAA to the United States for medical care that the government provided the insureds.[1] All five of the insureds were injured in auto accidents and treated prior to November 1990. In addition to their automobile insurance coverage with USAA, the five insureds were also entitled to medical care in government facilities by virtue of their military status pursuant to 10 U.S.C. § 1074. Therefore, each individual could choose to seek treatment for injuries in a non-government facility for which USAA would cover the costs, or each could choose treatment in a government run facility. As a result of their injuries, each of the five insureds here sought treatment in the medical center at Scott Air Force Base; three of the insureds required inpatient care. Because the insureds received free medical care at the Air Force Base, USAA incurred no obligation to reimburse them for their costs. However, pursuant to 10 U.S.C. § 1095, the United States brought suit against USAA for reimbursement of the costs of the medical care it had rendered to the insureds.

Prior to the 1990 amendments to the statute, § 1095 stated in pertinent part that:

> In the case of a person who is covered by section 1074(b) ... of this title, the United States shall have the right to collect from a third-party payer the reasonable costs of inpatient hospital care incurred by the United States on behalf of such person through a facility of the uniformed services to the extent that the person would be eligible to receive reimbursement or indemnification from the third-party payer if the person were to incur such costs on the person's own behalf.

Moreover, "third-party payer" was defined as "an entity that provides an insurance, medical service, or health plan by contract or agreement." 10 U.S.C. § 1095(g) (1988). Effective November 5, 1990, however, the section was amended to define "third-party payer" as "an entity that provides an insurance, medical service, or health plan by contract or agreement, *including an automobile liability insurance or no fault insurance carrier.*" 10 U.S.C. § 1095(h)(1) (Supp. II 1990) (emphasis added).

### B. *District Court Proceedings*

On June 20, 1991, the United States filed a five-count complaint against USAA pursuant to 10 U.S.C. § 1095. The government sought reimbursement of the inpatient and outpatient expenses incurred at Scott Air Force Base by the five insureds. The complaint asserted that the insureds were entitled to medical care from the United States by operation of § 1074 and that USAA was a

---

1. The exclusion for medical payment coverage reads: "For bodily injury sustained by any person who receives services or benefits for such bodily injury from any military or government agency, hospital or other facility operated by or for any government unless that person is legally required to pay for those services or benefits." R. 13, Easy Reading Auto Policy Medical Payments Coverage Endorsements.

"third-party payer" under § 1095 and thus statutorily liable for the costs of medical care. The government filed a motion for summary judgment and USAA, in response, contended that it was not a third-party payer as defined by the statute and was therefore not liable to the United States. Additionally, it argued that the statute did not allow the government to recover the costs of outpatient care.

On March 6, 1992, the district court granted in part and denied in part the government's motion for summary judgment. The court first determined that the pre–1990 version of § 1095, and not the amended version, governed this litigation because the insureds' medical treatment was rendered prior to the November 1990 amendment. The court then held that the term "third-party payer" was unambiguously defined in § 1095, and therefore rejected USAA's suggestion that it should look to the legislative history of both the original and amended versions for interpretive guidance. The court ultimately determined that, based on the clear language of the statute, USAA was a "third-party payer" as defined under § 1095 and therefore was liable to the government. The court also determined that, under the plain language of the statute, the United States was only entitled to recover the costs incurred through inpatient care. Accordingly, the government's request for reimbursement for the cost of outpatient care was denied, eliminating any reimbursement for the two insureds who received no inpatient care. Finally, the court granted the government's request for a ten percent surcharge under 28 U.S.C. § 3011.

On March 30, 1992, the district court entered judgment in favor of the United States in the amount of $12,163.80 as the total cost of inpatient care for the three insureds who were so treated, as well as the additional ten percent statutory surcharge. On April 13, 1992, USAA filed a motion to alter or amend the judgment and also filed a motion to

amend its answer to the government's complaint. The April 13 motions sought to limit USAA's liability to the United States for one of the five injured individuals in the amount of $2,000.00, which was the liability limit in his policy.[2] The district court granted leave to amend the answer and entered an amended judgment in favor of the United States in the amount of $7,660.50. USAA appeals the amended judgment.

## II

## ANALYSIS

### A.

USAA first contends that the district court erred when it determined that the definition of third-party payer in the pre–1990 version of § 1095 clearly includes automobile liability insurers.[3] As noted above, in the pre–1990 statute a "third-party payer" was defined as "an entity that provides an insurance, medical service, or health plan by contract or agreement." The district court stated only that this language clearly indicates that the government is entitled to recover the costs of inpatient care from USAA.

We must disagree respectfully with this assessment. In our view, the language is sufficiently vague to preclude definitive adjudication on this basis. It is unclear from the text of the statute alone whether the definition of "third-party payer" includes an insurer that had provided auto liability insurance that covers an insured's medical expenses for injuries sustained in an auto accident. More precisely, under this definition, it is uncertain whether an automobile insurance policy provision, which covers medical costs resulting from automobile accidents, is "an insurance, medical service, or health plan" under § 1095. Such a provision could be characterized as "medical service" or as a "health plan" because the policy does cover medical expenses under certain circumstances. However, Congress' use of the term "insurance"

---

**2.** Under the original and amended 10 U.S.C. § 1095, the United States may only recover the costs that the insured would recover. Therefore, the government's recovery is limited by co-insurance, deductibles, and policy limits which would limit the insured's recovery.

**3.** The parties do not contest the district court's determination that the original version of § 1095 applies to this case.

as an adjective rather than a noun, and the use of the terms "medical" and "health" in juxtaposition with "plan" could also indicate that the statute was only intended to reach issuers of health care insurance.

### B.

■ When the plain language of a statute is unclear, we may then look to its legislative history for guidance. *United States v. Shriver*, 989 F.2d 898, 901 (7th Cir.1992); *United States v. On Leong Chinese Merchants Ass'n Bldg.*, 918 F.2d 1289, 1296–97 (7th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 52, 116 L.Ed.2d 29 (1991); *Kelly v. Wauconda Park Dist.*, 801 F.2d 269, 270 (7th Cir.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed.2d 781 (1987).

In turning to the legislative history of the section, we believe that it is important to evaluate that history against the backdrop of the pre-existing statutory scheme and case-law in this area. Before the enactment of § 1095, the government was entitled, as it is today, to recover medical care costs under federal tort law from third-party tortfeasors who injured military personnel. *See* Federal Medical Care Recovery Act, 42 U.S.C. §§ 2651–53 (FMCRA).[4] Because military personnel receive free medical care after being injured in an automobile accident, the tortfeasor who caused the injury could escape financial responsibility to the individual for the medical services rendered. The FMCRA was enacted to permit the government to obtain reimbursement from those persons whose negligence created the need for government medical services.

It is not always possible to receive reimbursement from a negligent third party. Therefore, the government often-times found that it was advantageous for it to seek reimbursement for its medical services from insurance carriers that have contracted with the injured military personnel. Prior to the enactment of § 1095 in 1985, the federal courts generally had held that the United States could recover medical expenses from military personnel's private insurance carriers. Unlike negligence actions against tortfeasors that were based on explicit federal statutory authority, these actions against the injured member's carrier were based on state third-party beneficiary law. *See United States v. State Farm Mut. Auto. Ins. Co.*, 936 F.2d 206 (5th Cir.1991); *United States v. Government Employee Ins. Co.*, 461 F.2d 58 (4th Cir.1972); *United States v. State Farm Mut. Auto. Ins. Co.*, 455 F.2d 789 (10th Cir. 1972); *United States v. California State Auto. Ass'n*, 385 F.Supp. 669 (E.D.Cal.1974), *aff'd*, 530 F.2d 850 (9th Cir.1976). By operation of the terms and definitions in private insurance contracts, the government was characterized as a third-party beneficiary and thus entitled to reimbursement for the cost of medical services for which the private insurer was liable. These state law based contract actions encountered, however, a significant hurdle. Because recovery under a third-party contract theory depended on the terms of each individual insurance policy and on state third-party beneficiary law, insurers were able to defeat the government's recovery by inserting in the policy an exclusion denying payment in situations in which the United States provided the services. *See* H.R.Rep. No. 300, 99th Cong., 1st Sess. 8 (1985), *reprinted in* 1986 U.S.C.C.A.N. 42, 756, 763.

> These exclusionary clauses relieve the insurance carrier of liability for payment where the policy holder has no legal obligation to pay or where the care is provided in a government facility, notwithstanding the fact that the insurance carrier would have provided reimbursement for the cost of care for the same individual if that care were provided in a nongovernment hospital.

*Id.* at 763–64.

In enacting § 1095, Congress' initial legislative effort was limited to what it considered

---

4. The Supreme Court in *United States v. Standard Oil Co.*, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947), held that absent a federal statute, the United States could not recover medical costs from third-party tortfeasors who injured military personnel. The Court held that state law did not control the government's right to recovery, and it declined to create a federal common law right to recovery, deferring instead to Congress. *Id.* at 305–10, 67 S.Ct. at 1607–09. In response to the Court's invitation in *Standard Oil*, Congress enacted the Federal Medical Care Recovery Act.

the prime source of coverage for medical services incurred. The legislative history of § 1095 suggests that "third-party payer" was not intended to include issuers of auto insurance plans, but rather was intended to reach issuers of health and medical insurance plans. In enacting § 1095, Congress focused on the fact that retired military personnel often pursue second careers in which their new employers provide health insurance programs. *See* 1986 U.S.C.C.A.N. at 763. Although these military retirees and dependents are then covered by employer-issued insurance, they may still choose to seek medical care at government facilities and, under most circumstances, these individuals would be under no personal legal obligation to repay the government for the cost of this care. *See* 10 U.S.C. §§ 1074, 1076, 1077.

Congress noted that many insurance policies contained exclusionary clauses that relieved private insurers of liability for payment where injured insureds were under no obligation to pay or where the medical care was rendered in a government hospital. 1986 U.S.C.C.A.N. at 763. The original enactment of § 1095 appears to have been a legislative reaction to these restrictive clauses, but that reaction seems to have been focused on health plans. The statute authorized the government to seek reimbursement despite these exclusionary clauses. Notably, the legislative history specifically details the interaction of the statute with existing medical and health insurance plans, focusing on certain services such as psychiatric care that are often not covered by private insurance plans, reimbursement rates, and requirements such as pre-admission screening and second opinions that insurers deem necessary before payment on a policy can occur. *Id.* at 764. Although it carefully states the statute's effect on health insurers, nowhere does the legislative history make any reference to auto insurers. Based on this legislative history of the pre–1990 statute, we believe that Congress was primarily concerned with authorizing reimbursement from health insurers of second career military personnel.

This reading of the statute is confirmed by the 1990 amendment of § 1095. The amendment altered the definition of "third-party payer" to include specifically "automobile liability insurance or no fault insurance" carriers. 10 U.S.C. § 1095(h)(1) (Supp. II 1990). The legislative history of this amendment suggests that it was intended to *enlarge* the scope of the original statute to expand the definition of "third-party payer" and not simply to clarify the meaning of the term. The House Report states that the new provisions "would expand the current collection authority to include outpatient, as well as inpatient, care. In addition, [the new provisions] would authorize collection from Medicare supplemental insurance policies and from no-fault automobile insurance policies." H.R.Rep. No. 665, 101st Cong., 2d Sess. 293, *reprinted in* 1990 U.S.C.C.A.N. 2931, 3019. This focus demonstrates that automobile insurers were not third-party payers under the original definition.

## C.

This expansion of the government's statutory right to reimbursement from third parties has also been recognized in the regulations promulgated by the Secretary of Defense. The Secretary of Defense is charged with prescribing regulations for the administration of the statute. *See* 10 U.S.C. § 1095(f); 32 C.F.R. §§ 220.1–220.10 (1992). Pursuant to the 1990 amendment of the section, the Secretary amended the regulations that implement the third-party payer collection framework to accord with Congress' directive. In setting forth the final rule that contained the amendments, the Secretary noted that "[t]his final rule also implements recent legislative amendments that *expanded* [the Uniformed Services'] third party collection authority to cover outpatient services, automobile liability and no-fault insurance policies, and Medicare supplemental insurance plans." Collection From Third Party Payers of Reasonable Costs of Healthcare Services, 57 Fed.Reg. 41,096 (1992) (emphasis added). As background, the Secretary stated that Congress was disappointed with the low level of collections government facilities were reaping under the initial version of the statute. He described that original version as "based on the premise that *private health care plans* should not avoid payment for inpatient healthcare services provided to

their beneficiaries solely because those beneficiaries also happen to be entitled to space available care in military facilities." *Id.* Relying in part on· government reports of the Inspector General of the Department of Defense and of the General Accounting Office that called for a more active collection program, including collections in tort liability cases, such as automobile accidents, and expanding collection authority to cover no-fault automobile insurance policies, the Secretary concluded that Congress had significantly amended § 1095. *Id.* The Secretary also noted that the Senate Appropriations Committee had explained that the amended provision would "allow the Department of Defense to collect from Medicare supplemental insurance policy carriers and from automobile liability and no-fault insurance carriers for treatment of eligible patients in military hospitals." *Id.*

Thus, the Secretary clearly saw Congress' inclusion of automobile liability insurers under the definition of third-party payers as an expansion of the statute's original scope and not as a clarification. Indeed, the Secretary enacted a new regulation, 32 C.F.R. § 220.11(c), which distinguishes between automobile and no-fault liability insurance policies that have been in continuous effect without amendment prior to the November 5, 1990 amendment of the statute and those entered into, amended, or renewed after the amendment. 57 Fed.Reg. at 41,103. Those policies entered into after the date of the amendment, therefore, may not exclude payment to the government. *Id.* By this action, the Secretary of Defense recognized the change brought by the amendment and allowed pre-amendment automobile insurance policies to continue the industry practice of excluding payment to the government, as was permitted under pre-amendment law. The Secre-

tary of Defense has therefore interpreted the original § 1095 as excluding issuers of automobile insurance policies.

■ Under the principles of statutory construction enunciated in *Chevron v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), a court must give considerable weight to an agency's interpretation of a statute that it is entrusted to administer.[5] The Secretary's interpretation is based on a reasonable construction of the statute and is therefore entitled to our deference.

■ In sum, the legislative history of the original statute and of its 1990 amendment and the Secretary of Defense's interpretive regulations all support the conclusion that automobile insurers are not "third-party payers" as defined in the original § 1095. Neither party contests that the original .version of § 1095 applies to this case. Accordingly, USAA is under no federal statutory obligation to reimburse the United States for the cost of the insureds' medical care.[6]

### Conclusion

For the foregoing reasons, we reverse the judgment of the district court.

REVERSED.

---

**5.** The rule in *Chevron* applies when Congress has not spoken on the precise issue to be decided—where the statute is silent or ambiguous with respect to that issue. 467 U.S. at 842–43, 104 S.Ct. at 2781–82; *see also Condo v. Sysco Corp.,* 1 F.3d 599, 603–04 (7th Cir.1993) (stating same); *Board of Educ. v. Alexander,* 983 F.2d 745, 750–51 (7th Cir.1992) (stating same). As we have noted previously, Congress has not spoken to the applicability of the original § ˙1095 to automobile insurers and the statute is ambiguous with respect to that issue.

**6.** We have no occasion in this appeal to address whether there are any circumstances when, in the absence of statutory authorization, the government might have a right under state law to seek reimbursement from an insurer. *Cf. United States v. State Farm Mut. Auto. Ins. Co.,* 936 F.2d 206, 209 (5th Cir.1991) (recognizing that the government's right to recovery under § 1095 is concurrent with ·its ability to recover under state contract law).